IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, | : |
| Plaintiff, | : |
| vs. | : Civil Action No.: 7:17cv348 |
| STARK JONES, | : By: Hon. Robert S. Ballou |
| DGW ENTERPRISES, LLC, | : United States Magistrate Judge |
| and | : |
| FEEDING AMERICA SOUTHWEST VIRGINIA, | : |
| Defendants. | : |

**REPORT AND RECOMMENDATION**[1]

This matter is currently before me on cross claimant Feeding America Southwest Virginia's ("Feeding America") motion for entry of default judgment on its cross claim against cross defendant DGW Enterprises, LLC ("DGW"). Dkt. No. 51. DGW is currently in default on Feeding America's cross claim, and has filed no response to the motion for entry of default judgment. See Order, Dkt. No. 40; Clerk's Entry of Default, Dkt. No. 42. Because no party has requested oral argument, and I find that oral argument will not aid in my decision, this motion is ripe for decision. I **RECOMMEND** that Feeding America's motion for entry of default judgment be **GRANTED** and that Feeding America be awarded Eleven Thousand Three Hundred and Seventy Four Dollars ($11,374.00) in attorneys' fees.[2]

---

[1] By order entered September 22, 2017 (Dkt. No. 26), this case was referred to me for both non-dispositive and dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and (B).

[2] Feeding America does not ask for an award of expenses. See Mot. for Default Judgment at 2, Dkt. No. 51.

## I. Background

Nationwide Mutual Insurance Company ("Nationwide") brought this declaratory judgment action to resolve adverse claims to a policy of insurance, following a fire at a building Feeding America had contracted to purchase from DGW. DGW Enterprises had assigned the insurance proceeds to Feeding America and, on Feeding America's motion for summary judgment, the district court determined that the Assignment of Insurance Claim from DGW to Feeding America was valid, and that Feeding America was entitled to payment of the insurance proceeds in the amount of $161,483.97.[3] See Dkt. No. 47, 48, 50. The district court retained jurisdiction over Feeding America's cross claim against DGW, noting that the "clerk has already entered default as to [DGW] on the cross claim."[4] Dkt. No. 50.

Feeding America's cross claim alleges DGW breached the Addendum to Contract and the Assignment of Insurance Claim it entered into with Feeding America. See Cross Claim ¶¶ 20–25, Dkt, No. 13. The cross claim asserts that:

> by falsely communicating to Nationwide that the Assignment of Insurance Claim is 'illegal' (when in fact [it] is valid and fully enforceable), and by instructing Nationwide that all money due for the claim should be paid to either Stark Jones or DGW, DGW has breached the Assignment of Insurance Claim and has breached the parties' contract.

Id. at ¶ 25. Feeding America moves for entry of a default judgment against DGW on the cross claim, and as damages, asks for its legal fees incurred in defending against the declaratory judgment action brought by Nationwide.

---

[3] Nationwide had previously paid $24,562.80 to Servicemaster of Roanoke for initial remediaton work. Compl. ¶ 14, Dkt. No. 1.

[4] The court's prior memorandum opinion and report and recommendation discuss the facts of this case in more detail. Dkt. Nos. 47, 48.

## II.     Standard of Review

Feeding America has moved for default judgment against DGW under Federal Rule of Civil Procedure 55(b)(2), which provides that where a claim is not for a sum certain, the plaintiff must apply to the court for a default judgment. However, the moving party is not entitled to default judgment as a matter of right, instead, "[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered." EMI April Music, Inc. v. White, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)) (citation omitted).[5] Though "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact" he does not admit conclusions of law. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (internal quotation marks and citations omitted); see also Fed. R. Civ. P. 8(b)(6). Thus, the "appropriate inquiry is whether or not the face of the pleadings supports the default judgment and the causes of action therein." Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 187 F.3d 628, 1999 WL 598860 at *1 (4th Cir. 1999) (unpublished table opinion) (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).

In a diversity action, a parties' right to recover attorneys' fees is "ordinarily governed by state law."[6] See Ranger Const. Co. v. Prince William County School Board, 605 F.2d 1298, 1301 (4th Cir.1979); Rohn Prod. Int'l, LC v. Sofitel Capital Corp. USA, No. CIV. WDQ-06-504, 2010

---

[5] A federal court that is sitting in diversity generally applies the relevant state substantive law, but federal procedural law. Erie R.R. v. Tompkins, 304 U.S. 64, 58 (1938).

[6] Virginia substantive law applies here, as this case was filed in the Western District of Virginia based on diversity jurisdiction, and involves a dispute over the proper payment of an insurance policy issued in Virginia. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941) (holding that a federal court sitting in diversity jurisdiction must apply the choice-of-law principles of the State in which the federal court is located); Buchanan v. Doe, 431 S.E.2d 289, 291 (Va. 1993) ("[T]he law of the place where an insurance contract is written and delivered controls issues as to its coverage.").

WL 3943747, at *4 (D. Md. Oct. 7, 2010) ("In a diversity case, absent a conflicting applicable federal rule of procedure, state law governs not only the actual award of attorneys' fees but also the method of determining those fees.") (quotation omitted)). Accordingly, I apply Virginia law to determine both whether Feeding America has a right to recover any attorneys fees, and the reasonableness of the fees claimed.

### III. Analysis

#### A. Default Judgment

Feeding America's cross claim contends that DGW breached the Addendum to Contract and the Assignment of Insurance Claim that it entered into with Feeding America when it asserted a claim against the Nationwide insurance proceeds, causing Nationwide to bring this action. See Cross Claim at ¶¶ 20–27, Dkt. No. 13. DGW did not defend against the declaratory judgment and did not maintain in this action that it was entitled to recover under the Nationwide policy.[7] The district court found that the Assignment of Insurance Claim from DGW to Feeding America was valid, and that Feeding America was entitled to payment of the insurance proceeds. Dkt. Nos. 48, 50. I find that the facts alleged in the cross claim, including that DGW falsely communicated to Nationwide that the Assignment of Insurance Claim was illegal and that it instructed Nationwide to pay either DGW or Start Jones the insurance proceeds, establish that DGW breached its contract with Feeding America, and that Feeding America is entitled to default judgment. See Brown v. Harris, 251 Va. 301, 306 (1996) (setting out the elements for a breach of contract action in Virginia as (1) a legal obligation, (2) a violation or breach of that right or duty, and (3) a consequential injury or damage). Accordingly, I recommend that the

---

[7] The answer to the complaint and counterclaim filed by Stark Jones on behalf of DGW (Dkt. No. 21) was struck by the court, by order entered October 6, 2017, because a corporation may only appear in court through licensed counsel. Dkt. No. 29.

4

court grant Feeding America's motion for entry of default judgment on its cross claim against DGW.

### B. Requested Relief – Attorneys' Fees

Feeding America asserts that by virtue of DGW's breach of contract it may "recover compensatory damages including the reasonable attorneys' fees incurred in defending this action." Feeding America's Mot. at 2, Dkt. No. 41. The general rule in Virginia is that in the absence of a statutory or contractual provision to the contrary, attorneys' fees are not recoverable by the prevailing litigant. See Gilmore v. Basic Indus., 357 S.E.2d 514, 517 (Va. 1987). Feeding America recognizes that no statute or contract provides for attorneys' fees in this case; instead, Feeding America points to Hiss v. Friedberg, 112 S.E.2d 871 (Va. 1960), where the Supreme Court of Virginia recognized a narrow exception to this general rule.

In Hiss, the court held that, "where a breach of contract has forced the plaintiff to maintain or defend a suit with a third person, he may recover the [reasonable] counsel fees incurred by him in the former suit." Id. at 875–76; Accord Owen v. Shelton, 277 S.E.2d 189, 192 (Va. 1981). In Hiss, plaintiffs (the Friedbergs) hired attorneys Hiss and Rutledge to perform a title search on their recently purchased property, procure title insurance, and settle the transaction. Because of an allegation of an unrecorded lease on the property, an escrow agreement was executed authorizing Hiss and Rutledge to deliver the cash and notes to the sellers, and to record the deeds, only when Hiss and Rutledge had received a title insurance policy guaranteeing the Friedbergs a fee simple title to the property. Contrary to this agreement, Hiss and Rutledge recorded the deeds and delivered the cash and notes to the sellers without

5

getting the required title insurance policy.[8] The Friedbergs were unable to obtain immediate possession of the property because of the unrecorded lease and filed suit against the sellers for breaches of warranty and covenants. Ultimately, the Friedbergs settled their claim, reserving the right to proceed against Hiss and Rutledge for "damages attributable to their breach of contract." Hiss, 112 S.E.2d at 874. In the action against Hiss and Rutledge, the Friedberg's were awarded counsel fees incurred in their litigation against the sellers. Id. The court found that "the employment of counsel by the Friedbergs was a direct and necessary consequence of the breach of the contract of employment of Hiss and Rutledge and the breach of their escrow agreement." Id. at 876.

I conclude that the circumstances here are akin to instances where the Supreme Court of Virginia has determined that an award of attorneys' fees in the absence of a contractual provision is appropriate. As a direct result of DGW's breach of its contract with Feeding America, Feeding America had to defend a suit by a third party - namely Nationwide's declaratory judgment action. See Hiss, 112 S.E.2d at 875; Owen, 277 S.E.2d at 192.[9] Because DGW breached the Assignment of Insurance Claim, Nationwide brought this declaratory judgment action which, in turn, required Feeding America to employ counsel to secure from Nationwide the insurance proceeds that Feeding America had purchased. See Hiss, 112 S.E.2d at 876–77. ("Because of the failure of Hiss and Rutledge to perform the obligations imposed upon them it

---

[8] The insurance policy issued a few days *after* the sale failed to insure against "[r]ights of parties in actual possession of all or any part of the premises other than the insured." Hiss,112S.E.2d at 874.

[9] The instant case should be distinguished from Long v. Abbruzzetti, 487 S.E.2d 217, 219–20 (Va. 1997), where the Supreme Court of Virginia found that the plaintiff's attorneys' fees "were consequential, rather than direct, damages because they arose from the intervention of special circumstances not ordinarily predictable." Here, in contrast, it was reasonably foreseeable that DGW's action of denying the legality of the contracts it entered into with Feeding America regarding the payment of the insurance proceeds would require Feeding America to incur attorneys' fees in a suit with Nationwide.

6

was necessary that the Friedbergs employ counsel to secure from the Hortons that which they (the Friedbergs) had purchased and paid for.").

However, the attorneys' fees exception does not apply to the cost of litigating with the defendant itself. Hiss, 112 S.E.2d at 876. Appropriately, Feeding America seeks to recover only the amount of legal fees it incurred in defending the declaratory judgment action brought by Nationwide, and not fees related to Feeding America's cross claim against DGW. Feeding America's Mot. at 2, Dkt. No. 51.

### C. Reasonableness of Attorneys' Fees

To be entitled to attorneys' fees, Feeding America must also prove that the fees were "reasonable in the amount and reasonably incurred." Hiss, 112 S.E.2d at 876; see also Chawla v. BurgerBusters, Inc., 499 S.E.2d 829, 833 (Va. 1998) (holding that a party seeking to recover attorneys' fees has the burden of proving *prima facie* that the fees sought are reasonable.). To determine reasonableness, "a fact finder may consider, *inter alia,* the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate. Chawla, 499 S.E.2d at 833, citing Seyfarth, Shaw v. Lake Fairfax Seven Ltd. Partnership*,* 480 S.E.2d 471, 473 (Va. 1997). Additionally, "the professional skill and experience required by the case, the character and standing of the attorneys in their profession, whether the fee was an absolute or contingent one, the reasonableness of the hourly rates charged, the accuracy of the time billed, whether future services in connection with the case will be necessary, and 'other attendant circumstances' also impact the reasonableness of an award." Double K Properties, LLC. v. Aaron Rents, Inc., No. 1:03CV00044, 2003 WL 22697218, at *3

7

(W.D. Va. Nov. 14, 2003) citing Mullins v. Richlands Nat. Bank, 403 S.E.2d 334, 335 (Va. 1991). However, the court is not required to consider all of these factors in every situation, but instead may note the factors relevant to its determination of the reasonableness of the requested fees. W. Square, L.L.C. v. Commc'n Techs., Inc., 649 S.E.2d 698, 703 (Va. 2007). Finally, despite DGW's failure to contest the award of attorneys' fees, I must still review Feeding America's fee award request independently for reasonableness. See Kennedy v. A Touch of Patience Shared Hous., Inc., 779 F.Supp.2d 516, 525 (E.D.Va. 2011).

Feeding America requests an award of attorneys' fees in the amount of $11,374.00 and has submitted its attorneys' billing statements in support. This amount reflects only the time spent in defending the declaratory judgment action filed by Nationwide, and does not include the time spent on the cross claim against DGW. Feeding America's legal counsel, Mark Loftis, charged a discounted hourly billing rate of $300.00 per hour.[10] I find that this billing rate is reasonable given the geographic location of the litigation and the experience level of Mr. Loftis. See Blum v. Stenson, 465 U.S. 886, 895 (1984); See also Tazewell Oil Co., Inc. v. United Virginia Bank/Crestar Bank, 413 S.E. 2d 611, 621 (Va. 1992) (finding that expert testimony is not necessary where plaintiff provided detailed time records and affidavits of attorneys regarding the reasonableness of its rates). This court has previously found that a billing rate of $350 per hour was reasonable. See Hudson v. Pittsylvania Cty., Va., No. 4:11CV00043, 2015 WL 3447821, at *3 (W.D. Va. May 28, 2015); Brown v. Mountain View Cutters, LLC, 222 F. Supp. 3d 504, 513 (W.D. Va. 2016).

---

[10] Mr. Loftis indicates that his current standard hourly billing rate on litigation matters is $365.00 per hour, and may be as high as $380.00 per hour. However, he charged Feeding America a discounted rate based on his "assessment of the complexity of the issues in the case, and in recognition of Feeding America's status as a charitable entity . . . ." Ex. A to Feeding America's Mot., at ¶ 6, Dkt. No. 51-1.

Here, the evidence submitted sets out Mr. Loftis's hourly billing rate, and includes time records detailing the legal services provided, and a declaration that the fees incurred were appropriate and reasonable. See Decl. Mark Loftis at ¶ 7, Ex. A to Feeding America's Mot., Dkt. No. 51-1. The billing records provide adequately specific descriptions as to the tasks performed. Brown, 222 F. Supp. 3d at 514 (noting that "the use of excessively vague time descriptions is a generally disfavored billing practice [because] [s]uch descriptions inhibit the court's reasonableness view")(citation omitted). Accordingly, I find that, on review of the records submitted, and with knowledge of the case, the number of hours billed and the rate billed was reasonable.

### IV. Conclusion

Accordingly, it is **RECOMMENDED** that the motion for default judgment against DGW (Dkt. No. 51) be **GRANTED** and judgment for attorneys' fees be entered in favor of Feeding America and against DGW, in the amount of Eleven Thousand Three Hundred and Seventy Four Dollars ($11,374.00).

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record, the registered agent for DGW, and all pro se parties. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as

well as to the conclusion reached by me, may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

    Entered: November 8, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge